|     |                                                                                      |                                                     |
| --- | ------------------------------------------------------------------------------------ | --------------------------------------------------- |
|     | **UNITED STATES DISTRICT COURT**                                                                                                           |
|     | **EASTERN DISTRICT OF CALIFORNIA**                                                                                                         |
|     | **NOREENA MEZA,**                                                                    | **CASE NO. 1:19-CV-01303-AWI-SKO**                  |
|     | **Plaintiff,**                                                                       |                                                     |
|     | v.                                                                                   | **ORDER ON DEFENDANT EQUIFAX INC.'S MOTION TO DISMISS** |
|     | **EXPERIAN INFORMATION SOLUTIONS, INC.; TRANSUNION CORP.; and EQUIFAX, INC.;**       | (Doc. No. 14)                                       |
|     | **Defendants.**                                                                      |                                                     |

## INTRODUCTION

*Pro se* Plaintiff Noreena Meza brought an action in Fresno Superior Court alleging various common law claims and claims under the Fair Credit Reporting Act ("FCRA") against Experian Information Solutions, Inc. ("Experian"), Transunion Corp. ("Transunion") and Equifax, Inc. ("Equifax") (together, "Defendants"). That action was removed to this Court by Transunion, and Equifax now seeks dismissal of all claims against it pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. For the reasons set forth below, the Court will grant Equifax's motion to dismiss in its entirety, with leave to amend.

## FACTUAL BACKGROUND

In June 2019, Meza requested "three credit reports" through "creditreport.com" and discovered "almost 12-14 accounts … on his credit report without his knowledge." Doc. No. 1-3 at 2:18-20. On June 27, 2019, Meza wrote to "three credit report companies"— Experian, Transunion and Equifax— requesting an investigation into the accounts. Id. at 2:20-22. Meza also wrote to the "financial institution" associated with each of the accounts "requesting an internal investigation" and information on "how, when and where these accounts were opened and established." Id. at 2:21-24. Each Defendant responded to Meza's inquiry on or about July 31,

2019. Id. at 2:23-26. According to Meza, however, the Defendants failed to "investigate this matter and continue to report negative information that should not be reported." Id. at 2:27 -3:2. Further, Meza alleges that "Defendants failed to follow reasonable procedures to assure the maximum possible accuracy of information in [Meza's] consumer report," id. at 4:12-14, and that the Defendants incorrectly reported that Meza was "severely delinquent in paying on his account and had an outstanding balance" even though they "knew the statements were false or had no factual basis for making the statements." Id. at 4:26-28. This conduct adversely affected Meza's credit, prevented him from purchasing an automobile, and damaged his reputation. Id. at 4.

Based on this alleged wrongdoing, Meza brings the following claims against all three Defendants: (i) "Violation of the Fair Credit Reporting Act"; (ii) "Loss of Opportunity"; (iii) "Defamation"; (iv) "Negligence"; (v) "Intentional Infliction of Emotional Distress"; and (vi) "Intentional Infliction of Willful Misconduct." Doc. No. 1-3 at 4:6-7:4.

**DEFENDANT'S MOTION**

Equifax argues that the claims against it should be dismissed under Rule 12(b)(6) of the Federal Rules of Civil Procedure for four reasons. First, Equifax argues that Meza has "sued the wrong party" because Equifax "is not a consumer reporting agency" ("CRA") subject to the FCRA. Doc. No. 1-3, Arguments and Authorities, Part I. Second, Equifax contends that the Complaint is insufficient under Rule 8 of the Federal Rules of Civil Procedure because Meza "does not explain … what he contends was inaccurate on his credit file, what Equifax [] allegedly did or didn't do with respect to [his] dispute, how Equifax [] acted willfully or negligently, or any detail sufficient for Equifax [] to respond to the Complaint." Id., Argument and Authorities, Part II. Third, Equifax argues that the FCRA preempts the causes of action that arise under state law and common law. Id., Arguments and Authorities, Part III. And finally, Equifax argues that the Complaint fails to set forth allegations showing that Equifax's alleged wrongdoing was "willful" under the FCRA. Id., Arguments and Authorities, Part IV. Meza has not filed an opposition to Equifax's motion to dismiss.

*Legal Standard*

Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a complaint must provide "a

short and plain statement of the claim showing that the pleader is entitled to relief … in order to give the defendant fair notice of what the … claim is and the grounds upon which it rests." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957) and Fed.R.Civ.P. 8(a)(2)) (internal quotations omitted).

A court may grant a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure where the plaintiff fails to "state a claim upon which relief can be granted." Fed.R.Civ.P. 12(b)(6). A dismissal under Rule 12(b)(6) may be based on the lack of a cognizable legal theory or on the absence of sufficient facts alleged under a cognizable legal claim. Mollett v. Netflix, Inc., 795 F.3d 1062, 1065 (9th Cir.2015).

To avoid a Rule 12(b)(6) dismissal for a lack of facts, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citation omitted); Mollett, 795 F.3d at 1065. Rule 12(b)(6)'s plausibility standard "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. at 678 (citation omitted). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

When considering a motion to dismiss, all well-pleaded allegations of material fact are taken as true and construed in the light most favorable to the non-moving party. Faulkner v. ADT Sec. Servs., 706 F.3d 1017, 1019 (9th Cir.2013); see also, Iqbal, 556 U.S. at 678. A court, however, is not "bound to accept as true a legal conclusion couched as a factual allegation." Iqbal, 556 U.S. at 678. Nor is a court obliged to credit conclusory allegations, allegations contradicted by exhibits attached to the complaint or matters properly subject to judicial notice, unwarranted deductions of fact or unreasonable inferences. Daniels–Hall v. National Educ. Ass'n, 629 F.3d 992, 998 (9th Cir.2010); see also, Epstein v. Wash. Energy Co., 83 F.3d 1136, 1140 (9th Cir.1996) (stating that "unwarranted inferences" are "insufficient to defeat a motion to dismiss for failure to state a claim").

In short, the Ninth Circuit has distilled the following principles for motions under Rule 12(b)(6):

> First, to be entitled to the presumption of truth, allegations in a complaint or counterclaim may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively. Second, the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation.

Levitt v. Yelp! Inc., 765 F.3d 1123, 1135 (9th Cir.2014) (citation omitted).

When evaluating a *pro se* complaint, the pleadings are "to be liberally construed, and … however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. 89, 94 (2007). However, the court still may not "accept as true allegations that are merely conclusory." In re Gilead Scis. Sec. Litig., 536 F.3d 1049, 1055 (9th Cir.2008).

Under Rule 15(a) of the Federal Rules of Civil Procedure, leave to amend "shall be freely granted when justice so requires," bearing in mind "the underlying purpose of Rule 15 to facilitate decisions on the merits, rather than on the pleadings or technicalities." Lopez v. Smith, 203 F.3d 1122, 1127 (9th Cir.2000) (en banc) (ellipses omitted). A court may, however, "exercise its discretion to deny leave to amend due to 'undue delay, bad faith or dilatory motive on part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party ..., [and] futility of amendment.'" Carvalho v. Equifax Info. Servs., LLC, 629 F.3d 876, 892–93 (9th Cir.2010) (alterations in original) (quoting Foman v. Davis, 371 U.S. 178, 182 (1962)); see also, Garmon v. County of L.A., 828 F.3d 837, 842 (9th Cir.2016).

## **ANALYSIS**

The Court first addresses Equifax's arguments for dismissal of Meza's claims under the FCRA, and then addresses Equifax's arguments for dismissal of claims arising under common law.

### I. **Fair Credit Reporting Act Claims**

The Court begins by ascertaining what claims Meza is bringing against Equifax under the FCRA, applying the forgiving standards of construction applicable to *pro se* complaints. See Erickson, 551 U.S. at 94 (2007).

Meza alleges that the Defendants in this action "provid[e] credit information and risk

4

management services to businesses and consumers." Doc. No. 1-3 at 1:20-25. Further, he refers to Defendants collectively as the "three Credit report agencies" and the "three Credit borough[s]," while distinguishing them from "financial institutions" that allegedly furnished information to the Defendants. Id. at 2:18-26. He also alleges that the Defendants have collectively engaged in "incorrect negative reporting." Id. at 2:26-28. The Court, therefore, understands that Meza is suing the Defendants (including Equifax) as "consumer reporting agencies"—the term for "credit reporting agencies" in the FCRA—even though the Complaint contains various references to obligations on the part of "furnisher[s] of credit information" under the FCRA.[1] See, e.g., id. at 3:23-26.

As to Meza's claims against the Defendants under the FCRA, the Complaint makes express reference to 15 U.S.C. §§ 1681i(a), 1681n, 1681o and 1681s-2. See Doc. No. 1-3 at 3:8-15, 5:7-9. As stated in the Complaint, itself, 15 U.S.C. § 1681s-2 pertains to furnishers of information who have failed to perform certain duties upon valid notice of a credit reporting dispute. Doc. No. 1-3 at 3:10-12; see 15 U.S.C. § 1681s-2 (entitled "Responsibilities of furnishers of information to consumer reporting agencies"). Since Meza is suing Equifax and the other Defendants as CRAs, as opposed to furnishers of information, 15 U.S.C. § 1681s-2 does not appear to be relevant to this action and will not be addressed in this Order.

In addition to referencing the aforementioned FCRA provisions, the Complaint alleges "negligent noncompliance [] and willful failure to reinvestigate disputed entries." Doc. No. 1-3 at 5:7-9. It also states that Defendants "failed to investigate" the reporting inaccuracies at issue in this case, "report[ed] negative information that should not be reported," id. at 3:1-2, and "failed to follow reasonable procedures to assure the maximum possible accuracy of information in [Meza's] consumer report." Id. at 4:12-14.

15 U.S.C. § 1681i—entitled "Procedure in case of disputed accuracy"—governs "[r]einvestigations of disputed information" and provides that:

---

[1] The Court notes that the Complaint in this action appears to have been lifted *verbatim* in many respects from the complaint in *Singh Jr. v. Collectibles Management Resources*, Case No. 16-cv-835-LJO-BAM (E.D.Cal. 2016). The defendants in *Singh* were sued as furnishers of information, which may explain the stray references to furnishers of information in this action.

5

> if the completeness or accuracy of any item of information contained in a consumer's file at a consumer reporting agency is disputed by the consumer and the consumer notifies the agency directly, or indirectly through a reseller, of such dispute, the agency shall, free of charge, conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate and record the current status of the disputed information, or delete the item from the file … before the end of the 30-day period beginning on the date on which the agency receives the notice of the dispute from the consumer or reseller.

15 U.S.C. § 1681i(a)(1)(A).

15 U.S.C. § 1681e(b) contains language identical to that used in the Complaint, stating that "[w]henever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b).

Finally, 15 U.S.C. §§ 1681n and 1681o respectively create civil liability for "[a]ny person" who "willfully" or negligently fails to comply with "any requirement" under Subchapter III of the FCRA, including, for example, the "reasonable reinvestigation" requirements set forth in 15 U.S.C. § 1681i and the "reasonable procedures" requirements set forth in 15 U.S.C. § 1681e. See 15 U.S.C. §§ 1681n(a) (willful violations of the FCRA) & 1681o(a) (negligent violations of the FCRA).

The Court therefore understands Meza to be alleging "reasonable reinvestigation" claims (see 15 U.S.C. § 1681i) and "reasonable procedures" claims (see 15 U.S.C. § 1681e) against Equifax as a CRA, on willfulness and negligence theories. See 15 U.S.C. §§ 1681n, 1681o. The Court evaluates the allegations in the Complaint in this framework.

### a. Allegations That Equifax Is a CRA

Equifax argues that Meza's claims under the FCRA should be dismissed because Equifax "is not a consumer reporting agency ('CRA'), and thus [Meza] sued the wrong party." Doc. No. 14-1 at 1:10-11. According to Equifax, "a defendant must be a 'consumer reporting agency' that prepared a 'consumer report' concerning [Meza]" to be liable under the FCRA in an action such as this. Id. at 5:7-9. Further, Equifax asserts that "numerous courts have determined" that "'Equifax Inc.' is not a CRA as that term is defined by the FCRA," and cites factual findings on the issue from district courts in Michigan, Tennessee, Florida and North Carolina during the period from

2005 through 2014. Doc. No. 14-1 at 5:10-6:9.

The FCRA defines "consumer reporting agency" as:

> any person which, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties, and which uses any means or facility of interstate commerce for the purpose of preparing or furnishing consumer reports.

15 U.S.C. § 1681a(f).

Meza alleges that, like the other Defendants, Equifax "provid[es] credit information" to businesses and consumers, and that it is a "credit report company[y]," a "Credit report agenc[y]," and a "credit borough." Doc. No. 1-3 at 1:20-25, 2:18-26. These allegations plainly track the definition of CRA in the FCRA, and the Court cannot properly take judicial notice of findings of fact in the cases cited by Equifax that appear to contradict these allegations. See M/V Am. Queen v. San Diego Marine Constr. Corp., 708 F.2d 1483, 1491 (9th Cir.1983) (stating that "a court may not take judicial notice of proceedings or records in another cause so as to supply, without formal introduction of evidence, facts essential to support a contention in a cause then before it"). Indeed, Equifax has not requested that the Court do so. The Court therefore finds that Meza has adequately alleged that Equifax is a CRA under the FCRA and declines to dismiss the FCRA claims against Equifax on the grounds that Meza "sued the wrong party."

### b. Factual Allegations as to FCRA Violations

Equifax next argues that Meza has failed to state an FCRA claim under Rule 8 of the Federal Rules of Civil Procedure because he "does not explain in his Complaint which section(s) of the FCRA Equifax [] allegedly violated, what he contends was inaccurate on his credit file, what Equifax [] allegedly did nor didn't do with respect to the consumer dispute, how Equifax [] acted willfully or negligently, or any detail sufficient for Equifax [] to respond to the Complaint." Doc. No. 14-1 at 6:12-18. According to Equifax, the "Complaint is rife with conclusory allegations with no supporting factual averments," and Meza has failed to plead "any factual content, let alone factual content sufficient to allow the Court to draw the reasonable inference that Equifax [] is liable for the misconduct he attempts to allege." Id. at 7:17-22.

The following allegations essentially comprise the complete set of factual allegations in the

Complaint as to the conduct of Equifax and the other Defendants:

- in June 2019, Meza "requested his three credit reports" from the "Defendants" through creditreport.com, Doc. No. 1-3 at 2:18-20;
- Meza "discovered that there were almost 12-14 accounts … on his credit report without his knowledge," id. at 2:19-21;
- on or about June 27, 2019, Meza wrote to the "three credit report companies," requesting an "internal investigation" and "pointing out" that the accounts at issue "did not belong to [him]," id. at 2:20-22;
- while awaiting responses from the Defendants, Meza "wrote to each financial institution that [was] reporting negatively on his credit report requesting … how, when and where the[] accounts [at issue] were opened and established," id. at 2:21-24;
- on or about July 31, 2019, all three of the "Defendants" responded to Meza, id. at 2:23-25;
- "the Defendants['] incorrect negative reporting" adversely affected Meza's creditworthiness, id. at 2:26-28; and
- "the Defendants failed to investigate th[e] matter and continue to report negative information that should not be reported." Id.

As set forth below, the Court finds that these allegations are not sufficient to state a "reasonable procedures" claim under 15 U.S.C. § 1681e or a "reasonable reinvestigation" claim under 15 U.S.C. § 1681i against Equifax.

### i. "Reasonable Procedures" Claim Under 15 U.S.C. § 1681e

As stated above, 15 U.S.C. § 1681e(b) provides that "[w]henever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." Liability under this provision "is predicated on the reasonableness of the credit reporting agency's procedures in obtaining credit information." Shaw v. Experian Info. Sols., Inc., 891 F.3d 749, 755 (9th Cir.2018) (quoting Guimond v. Trans Union Credit Info. Co., 45 F.3d 1329, 1333 (9th

Cir.1995)). To make out a prima facie violation of 15 U.S.C. §1681e(b), however, "a consumer must first present evidence tending to show that a CRA prepared a report containing inaccurate information." Taylor v. First Advantage Background Servs. Corp, 207 F. Supp. 3d 1095, 1107 (N.D.Cal. 2016) (quoting Guimond, 45 F.3d at 1333). "If he fails to satisfy this initial burden, the consumer, as a matter of law, has not established a violation of [§ 1681e(b)], and a court need not inquire further as to the reasonableness of the procedures adopted by the credit reporting agency." Cahlin v. Gen. Motors Acceptance Corp., 936 F.2d 1151, 1156 (11th Cir.1991).

Here, the allegations as to violations of 15 U.S.C. § 1681e are made not as to Equifax individually, but as to all three of the "Defendants" as a group. Indeed, there is not even a discernable allegation that Equifax itself prepared a credit report for Meza. The Complaint states that Meza requested "his three credit reports through creditreport.com," but the next sentence refers to a single "credit report" that is not expressly attributed to any of the three Defendants. Id. at 2:18-21. See In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, and Products Liability Litig., 826 F.Supp.2d 1180, 1206 (C.D.Cal. 2011) (noting that a "wholesale failure to meaningfully differentiate among the Defendants [ ] ordinarily require[s] the dismissal of and repleading of these claims ….").

Further, the reporting inaccuracy at issue is described only as "almost 12-14 accounts … on the credit report" that Meza did not know about and that "d[id] not belong to" him. Id. at 2:19-22. District courts in the Ninth Circuit have found that the "plain allegation that 'the accounts do not belong'" to a plaintiff fails to provide a defendant "with sufficient notice as to the claims against it because it does not sufficiently identify the inaccuracies of the alleged reporting." See Iyigun v. Cavalry Portfolio Servs., LLC, 2013 WL 950947, at *1 (C.D.Cal. Mar. 12, 2013); O'Connor v. Capital One, N.A., 2014 WL 2215965, at *6 (N.D.Cal. May 29, 2014); see also, Gauci v. Citi Mortg., 2012 WL 1535654, at *5 (C.D.Cal. Apr. 30, 2012). And even if such an oblique allegation could be read to provide sufficient notice under Rule 8 as to a purported inaccuracy, the Court sees no basis for attributing the inaccuracy at issue here to Equifax as opposed to the other Defendants. See Manukyan v. Cach, LLC, 2012 WL 6199938, at *3 (C.D.Cal. Dec.11, 2012) (finding that a complaint "fail[ed] to comply with Rule 8 and fail[ed] to

put Defendants on notice of their supposedly improper conduct" because it because it "d[id] not differentiate between Defendants and makes no mention of any specific acts" on the part of an individual Defendant).

Meza's allegations that Defendants engaged in "incorrect negative reporting" and that they "continue to report negative information that should not be reported" are similarly insufficient to state a claim under 15 U.S.C. § 1681e(b) because, like the other allegations at issue here, they are not specific to Equifax and fail to provide notice as to the nature of the supposed reporting inaccuracy. And the remaining allegations in the Complaint as to possible FCRA violations—such as allegations that "Defendants are negligent of non-compliance with the FCRA" and that "Defendants failed to follow reasonable procedures to assure the maximum possible accuracy of information in [Meza's] consumer report," see Doc. 1-3 at 4:8-15—will not be credited by this Court because they are conclusory and merely restate the elements of a 15 U.S.C. § 1681(e) claim. See Daniels–Hall, 629 F.3d at 998; Levitt, 765 F.3d at 1135.

Because the allegations in the Complaint fail to attribute a reporting inaccuracy to Equifax, the Court GRANTS Equifax's motion to dismiss as to Meza's claim under 15 U.S.C. § 1681e. See Doster v. Experian Info. Sols., Inc., 2017 WL 264401, at *6 (N.D. Cal. Jan. 20, 2017) (granting motion to dismiss FCRA claim where "Plaintiff's FAC ma[de] only general and unspecified allegations that her credit report…contained inaccuracies and that [multiple] CRAs reported misleading and inaccurate information," without "alleg[ing] any conduct [] specific to [the CRA seeking dismissal]").

### ii. "Reasonable Investigation" Claim Under 15 U.S.C. § 1681i

15 U.S.C. § 1681i provides that a CRA must conduct a free and reasonable reinvestigation within thirty days of a consumer informing the CRA of disputed information. Shaw, 891 F.3d at 756. Although § 1681i "does not on its face require that an actual inaccuracy exist," the Ninth Circuit has "imposed such a requirement." Carvalho, 629 F.3d at 890. "Thus, to sustain either a § 1681e or a § 1681i claim, a consumer must first make a prima facie showing of inaccurate reporting by the CRA." Shaw, 891 F.3d at 756 (quoting Carvalho, 629 F.3d at 890) (internal quotation marks omitted).

As set forth above, the Complaint lacks allegations attributing a reporting inaccuracy to Equifax. Equifax's motion to dismiss is therefore GRANTED as to claims under 15 U.S.C. § 1681i.[2]

### c. **Willful Violation of the FRCA**

Equifax argues that, in addition to failing to allege violations of 15 U.S.C. § 1681e or 15 U.S.C. § 1681i, Meza has failed to allege that any violations of the FCRA by Equifax were willful. See Doc. No. 14-1 at 9:19-20. This argument appears to address the fact that paragraph 4 at page 3 of Complaint refers to 15 U.S.C. § 1681n, which provides a private right of action where a CRA "willfully fails to comply" with some provision of the FCRA, in addition to referring to 15 U.S.C. § 1681o, which provides a private right of action where a CRA is merely "negligent in failing to comply" with the FCRA. Doc. No. 1-3 at 3:8-14. As set forth above, Meza has failed to allege an FCRA violation of any kind and, therefore, the Court need not address the "willfulness" issue to decide this motion. The Court will do so anyway, in the interest of providing clarity to Meza as a *pro se* plaintiff.

A willful violation of the FCRA requires conduct that is "intentional or reckless." Kirchner v. Shred-it USA Inc., 2014 WL 6685210, at *1 (E.D.Cal. Nov. 25, 2014) (Safeco Ins. Co. of Am. v. Burr, 551 U.S. 47, 57 (2007)). A CRA acts in a "reckless" manner, for purposes of the FCRA, if its action "is not only a violation under a reasonable reading of the statute's terms, but shows that the company ran a risk of violating the law substantially greater than the risk associated with a

---

[2] Although no portion of the motion is decided on this basis, the Court also notes potential deficiencies in allegations relating to the investigation of disputed information. Meza alleges that "Defendants failed to investigate the dispute," Doc. No. 1-3 at 3:1-2, but also states that all three of the Defendants responded to his requests for investigation within a period of approximately one month. Id. at 2:18-26. The allegation that each Defendant responded to his request for investigation in approximately one month appears to evidence compliance with the 30-day reinvestigation window in 15 U.S.C. § 1681i and to contradict the naked, generalized assertion that no investigation was ever conducted by any of the Defendants. Should Meza elect to replead this claim, he is advised that courts consistently require more than "formulaic" allegations to state "reasonable reinvestigation" claims. See, e.g., O'Connor, 2014 WL 2215965, at *7 (dismissing claim because plaintiff alleged only "a mere label, conclusion, and a formulaic recitation of the elements of this cause of action" and "fail[ed] to offer any factual allegations supporting his contention that Defendant's investigation of his disputed account was unreasonable"); Iyigun, 2013 WL 950947, *2 (dismissing claim because "[t]he factual allegations with respect to [plaintiff's] purported dispute [were] merely conclusory recitations of the legal elements of an FCRA claim" and complaint did "not include any allegations as to the impropriety of [defendant's] investigation or any factual basis for a contention that the investigation was defective").

reading that was merely careless." Bateman v. American Multi–Cinema, 623 F.3d 708, 711 n.1 (9th Cir.2010) (quoting Safeco, 551 U.S. at 69). Thus, a plaintiff seeking to recover under a willfulness theory "must allege, at a minimum, that the defendant's reading of the FCRA is 'objectively unreasonable.'" Kirchner, 2014 WL 6685210, at *1 (quoting Safeco, 551 U.S. at 69).

The only allegations in the Complaint, however, that appear to be relevant to determining whether Equifax acted in an "intentional or reckless" manner are the allegations that Defendants, as a group, were "negligent," Doc. No. 1-3 at 2:26-28, 5:7-9, and "willful," id. at 4:20-21; that Defendants, as a group, "knew [] statements were false when made or had no factual basis for making the statements," id. at 4:27-38; that Defendants' defamatory "acts were malicious, willful and wanton and to the total disregard of Plaintiff's just rights," id. at 5:2-3; and that "Defendants intentionally and recklessly caused severe emotional distress to plaintiff by engaging in 'extreme and outrageous' conduct" and that "Defendants['] extreme and outrageous conduct toward plaintiff was deliberate, [i]ntentional and willful." Id. at 5:23-28.

These generalized and conclusory allegations lack any facts specific to Equifax and are, therefore, insufficient to support a reasonable inference that Equifax engaged in a willful violation of the FCRA. See Daniels–Hall, 629 F.3d at 998. Thus, the Court GRANTS Equifax's motion to dismiss as to FCRA claims predicated on 15 U.S.C. § 1681n.

## II. Preemption of Common Law Claims

Meza purports to state five claims under state common law against Equifax and the other two defendants: (i) "Loss of Opportunity"; (ii) "Defamation"; (iii) "Negligence"; (iv) "Intentional Infliction of Emotional Distress"; and (v) "Intentional Infliction of Willful Misconduct."[3] Equifax contends that these claims must be dismissed because they are preempted by the FRCA. Doc. No. 14-1 at 8:12-16.

15 U.S.C. § 1681h(e) states:

> Except as provided in sections 1681n and 1681o of this title, no consumer may bring any action or proceeding in the nature of defamation, invasion of privacy, or

---

[3] The Court expresses no opinion here on whether Meza's claims for "Loss of Opportunity" and "Intentional Infliction of Willful Misconduct" involve cognizable legal theories, but assumes they are common law claims for purposes of this analysis since they bear obvious similarities to recognized common law claims and relevant portions of the Complaint contain no reference to any state or federal statutes.

12

negligence with respect to the reporting of information against any consumer reporting agency, any user of information, or any person who furnishes information to a consumer reporting agency, based on information disclosed pursuant to section 1681g, 1681h, or 1681m of this title, or based on information disclosed by a user of a consumer report to or for a consumer against whom the user has taken adverse action, based in whole or in part on the report *except as to false information furnished with malice or willful intent to injure such consumer*.

15 U.S.C. § 1681h(e) (emphasis added).

Consistent with the plain language of the statute, courts consistently find that, where applicable, 15 U.S.C. § 1681h(e) preempts state common law causes of action against CRAs unless the plaintiff can show that the CRA acted with "malice" or a "willful intent to injure." See, e.g., Bloom v. I.C. Sys., Inc., 972 F.2d 1067, 1069 (9th Cir.1992) (finding that 15 U.S.C. § 1681h(e) preempts "state common law defamation claims"); see also, Xiong v. Equifax Info. Servs., LLC, 2005 WL 8154297, at *5 (N.D.Ga. Feb. 25, 2005) (finding that 15 U.S.C. § 1681h(e) "provides consumer reporting agencies … with immunity unless Plaintiff can show that Defendant acted with 'malice or willful intent to injure'" (citing Thornton v. Equifax, Inc., 619 F.2d 700, 703 (8th Cir. 1980)); Carlson v. Trans Union, LLC, 261 F. Supp. 2d 663, 664 (N.D.Tex. 2003) (stating that the "immunity" provided to CRAs under 15 U.S.C. § 1681h(e) "requires that a Plaintiff show 'malice or willful intent to injure' before the Plaintiff can recover for tort claims under state law" (quoting 15 U.S.C. § 1681h(e))); Wiggins v. Dist. Cablevision, Inc., 853 F. Supp. 484, 492–93 (D.D.C. 1994) ("Section 1681h(e) of the Act has been interpreted to provide a qualified immunity for consumer reporting agencies except as to false information furnished with malice or with willful intent to injure.").

Here, Meza's allegations are apparently predicated on a credit report that he requested through creditreport.com and that would have been provided pursuant to 15 U.S.C. § 1681g.[4] Doc. No. 14-1 at 2:18-26. Meza also alleges that Equifax is a CRA, Doc. No. at 1:23-25, and as an "individual," Meza, himself, plainly falls within the definition of "consumer" set forth in 15 U.S.C. § 1681a. Thus, the protections set forth in 15 U.S.C. § 1681h(e) apply. As set forth above, however, the only allegations going to the question of whether Equifax acted with "malice" or

---

[4] 15 U.S.C. § 1681g governs "[d]isclosures to consumers" and states, *inter alia*, that "[e]very consumer reporting agency shall, upon request … clearly and accurately disclose to the consumer [] all information in the consumer's file at the time of the request," subject to certain specified exceptions.

13

"willful intent to injure" appear to be allegations that Defendants, as a group, were "negligent," Doc. No. 1-3 at 2:26-28, 5:7-9, and "willful," id. at 4:20-21; that Defendants, as a group, "knew [] statements were false when made or had no factual basis for making the statements," id. at 4:27-38; that Defendants' defamatory "acts were malicious, willful and wanton and to the total disregard of Plaintiff's just rights," id. at 5:2-3; and that "Defendants intentionally and recklessly caused severe emotional distress to plaintiff by engaging in 'extreme and outrageous' conduct" and that "Defendants['] extreme and outrageous conduct toward plaintiff was deliberate, [i]ntentional and willful." Id. at 5:23-28.

Even applying the relaxed standards applicable to *pro se* plaintiffs, the Court cannot reasonably infer "malice" or a "willful intent to injure" on Equifax's part from such generalized and conclusory allegations. See Daniels–Hall, 629 F.3d at 998. Equifax's motion to dismiss is therefore GRANTED as to the Second, Third, Fourth, Fifth and Sixth Causes of Action.

## **CONCLUSION**

For the foregoing reasons, Equifax's motion to dismiss is GRANTED in its entirety. Since the pleading defects addressed above could conceivably be corrected and Meza has not yet amended his pleading, the Court also GRANTS LEAVE TO AMEND and will afford Meza 30 days from electronic service of this Order to file an amended complaint.

## **ORDER**

Accordingly, IT IS HEREBY ORDERED that:

1. Defendant's Motion to Dismiss (Doc. No. 14) is GRANTED in its entirety;
2. Plaintiff is granted 30 days from the date of electronic service of this Order to file an amended complaint;
3. The remainder of this case is referred to the magistrate judge for further proceedings.

IT IS SO ORDERED.

Dated:  December 13, 2019                    _____
                                              SENIOR DISTRICT JUDGE